The first argued case this morning is number 19, 1046 against the Department of Justice, Ms. Clasey. Good morning, your honors. May it please the court, my name is Susan Paul Clasey, counsel on behalf of the petitioner, Karen Lee. The agency erred in this case in denying Ms. Lee's claim because the agency, number one, failed to acknowledge the constructive designation of Ms. Lee as a beneficiary under the life insurance policy, and number two, the agency improperly read additional requirements into the statute. So, as a result, the agency's denial of the claim must be found to be arbitrary and capricious and should be reversed by this court. Did a court find that Ms. Lee was, in fact, a beneficiary under the life insurance policy? Your honor, it's even better than a court finding. The insurance company and the other potential claimant to the policy agreed in a settlement agreement that Ms. Lee had. Well, that's a settlement agreement. That doesn't mean that she's a beneficiary. That just means they settled and she got a portion of the money. No court held that she was a designated beneficiary as the benefits statute requires for purposes of giving her this particular death benefit? Number one, your honor, there was no need to have a court hearing and Ms. Lee should not be penalized because her claim was so strong that the other claimant chose not to litigate it. Or perhaps the other claimant was just really nice and no longer had any contact with the guy. I mean, I got to tell you, if some random ex-boyfriend from 20 years ago left my name on a life insurance, and then it turns out he's got a wife and three kids down the road, I'd turn the money over to them too. It's just the only right thing to do under the circumstances. I mean, you got to sleep at night and be a good person. So, it doesn't mean that she had a legal right, but maybe the other gal was sufficiently morally motivated to do the right thing. Well, the insurance company acknowledged that Ms. Lee had a colorable claim to the proceeds, and in fact, the bureau admitted that Karen was a constructive life insurance beneficiary, but that it would refuse to acknowledge constructive life insurance beneficiaries because it was not provided for under the Act, which is just false. The PSOB determination letter from 2012 states, the agency stated that the insurance company, quote, chose to deem her as an eligible beneficiary for its policy. By making that choice and deeming her a beneficiary under the policy, they recognized Sheriff Collier's 2008 video will in which, in his own voice and his own face, telling the people most important to him what he wanted to happen to all of his benefits upon if he was to die in the line of duty. He designated that everything should go to Karen Lee. Yes, but that isn't the method of actually designating, according to the statute, this death benefit. Well, under the statute, Your Honor, there are two provisions under which a designee can be found to be an intended payee. So under Section A4A, it requires that the executed designation of a beneficiary for the public safety officer benefit be on file with the employer. Isn't the real question how much legal weight is to be given to the video? That is an appropriate question, Your Honor, but there is also legal weight to be given to the PSOB, I'm sorry, the San Diego County, which also determined that she was the proper PSOB claimant. Well, the written record doesn't change the beneficiary, isn't that right? The record, the only record, was this video of saying these are my intentions. And the sworn testimony of various witnesses at the hearing who said that he believed he had taken care of everything. Just to be clear, that isn't the only record, right? The record also includes a written designation of the other lady as the beneficiary, correct? Correct. So there is an oral video recording of him or oral, I don't know if it's auditory or video, what is it? It's a video recording. Okay, there's a video recording of him saying what he wanted, but there's also a written document saying something that contradicts that, correct? The written document, that's correct, Your Honor. The written document was designated as a primary beneficiary, Sheriff Collier's mother, and then as a secondary beneficiary, yes, Ms. Stamp, his ex-girlfriend. That was the 1997 policy. Yes, Your Honor. And then he signed these reaffirmation documents as to what he attested to in 1997. He did that in 2003, 2006, 2007. And so he kept on reaffirming it. There were opportunities, clearly, to change the beneficiary's name on his insurance policy. And he kept on just reaffirming the original designees in the 1997 document. Your Honor, that is correct. In 2006, he reaffirmed that same form. In 2007, as you know, the forms changed and the form no longer listed the beneficiary's names. I guess our challenge here is that we're somewhat constrained as a court of law to follow the law. And, you know, the best we can do in terms of trying to break through what the policy actually says as the designee is to look at these pimental factors. And those, you know, the exception number three is, did Mr. Collier do take the best efforts possible in order to actually make efforts leading up to actually changing the beneficiary name on his insurance policy before he passed away? And there's nothing in this record that shows that he actually specifically took an action towards changing that insurance policy in some of the ways that we see in a couple decisions where there were efforts being made up until the time of death to change that name on the insurance policy. And then it just wasn't able to be done in time. Your Honor, the important part about the Pimentel and Saunders cases is that California recognizes that a designation can be made constructively. And so the important thing is, and of course any constructive designation is fact specific, it must be. Here, the policy actually, the governing policy, Appendix 202, actually provides that the beneficiary may be, that names of the beneficiary may be changed in writing, including either the form signed by the insured or a verification by the policyholder or employer of an electronic or telephonic designation made by the policyholder. Here, as you know, Sheriff Collier made the video will in 2008. The video will was made following his mother's death, who was the primary beneficiary, and just before he proposed to his future fiancee, Ms. Lee. The timing of that video will is compelling, and it was so compelling that the insurance company found that they refused to pay the claim to the name that was just listed on this beneficiary form, the name that the agency hangs its hat on, this individual designation form. Going back to the statute, and you're right, we're constrained by the statute. And so looking at the statute again, comparing 4A to 4B of the PSOB Act, 4A requires there to be an executed designation on file, but that's for the PSOB designation. Looking at 4B, which talks about the life insurance designee, all that is required to be on file is a legal and valid policy, the life insurance policy. It does not talk about having to have a designation form on file. And if Congress had intended that to be the narrow read, it certainly could have put that into the statute because it did so immediately prior in Section 4A. Well, in 4B, it says to the surviving individual designated by the public safety officer to receive benefits under the most recent executed life insurance policy. So has Ms. Lee been designated by the public safety officer to receive benefits under the most recently executed life insurance policy? She has, Your Honor. She was designated, she was constructively designated by Sheriff Collier's video will of 2008. No, but just, oh, okay. So again, and to your point, which is a good one, is that the designation does not have to be this specific form that lists out the names. The designation and the bureau is required to look at California law to determine what the insurance law requires. And under California law, a constructive designation is legal and binding. And the cases are fact specific. Here, as you know, there was a video will in 2008 where Sheriff Collier, in his own words, said that he wanted everything to go to Karen Lee and his death. So you think we should read A as being limited to the executed designation of beneficiary form that goes along with the policy, but B as broader and allowing for other forms of designation to be included? Yes, Your Honor, and because that is how insurance law is interpreted in California, which is what governs here. So what's the best case that you have that maybe a written statement or oral statement that's recorded where a person declares that they want their affairs to be handled a particular way and says they want this person to be designated in their life insurance policy, that that trumps what's actually written in the life insurance policy and the person makes no attempt to actually contact the life insurance company, that that's good enough to now cross out what's actually written on the life insurance policy? Your Honor, I would say a couple of, Pimentel and Saunders are the two cases discussing this constructive designation in California. In Saunders, the insured wrote a letter stating that she wanted to change the beneficiary. However, when she received the forms from the insurance company that were required to change it, she never completed them and never turned them in. She received those forms twice and she twice failed to turn them in to the insurance company and yet the insurance company honored that as a constructive designation. And as I said, the cases are fact specific. Those cases, the difference in those cases, and one of the problems with this analysis is that the cases are when there's a dispute and no one can agree on who is the designee. Here, Ms. Lee had such a strong case that the insurance company and the other person that had several hundred thousand dollars at stake and walked away from it for just 4% of that settlement agreement. She walked away for essentially the cost of her time. Walked away from this potential payout for her. Now, maybe she was just a good person. Maybe she recognized that Ms. Lee has, as the insurance company recognized, a colorable claim. And I'd like to point out that the insurance company and the insurance company has now deemed Ms. Lee to be the constructive beneficiary. The other potential claimant with hundreds of thousands of dollars at stake walked away from it for just 4%. And our burden in this case is merely to show that it's more likely than not that Ms. Lee was a designated beneficiary under the life insurance policy. And that's a, as you know, a 50% plus one chance. Do you have a declaration under California law of some sort that would resolve this question of inheritance? I think the most important point about the California law is that it does allow for constructive... Avoiding this big federal case? Well, the reason that we have the federal case is because the only agency, the only benefit that has been withheld from Ms. Lee is the public safety officer benefit. But you're saying they're not bound to follow California law of inheritance? I'm saying that the agency was bound to follow the California law of insurance designation. So there's... The insurance policy provides for other methods to... Well, of course, this is a mess. The question is how to straighten it out. Let's hear from the other side. And you can work the system to turn the light, the timer on. Okay. Thank you, Your Honor. Okay, Mr. O. Good morning, Your Honor. May it please the Court. In a lot of ways, this was a tough case for the BJA. To their credit, they get a lot of tough cases. And when you do get tough cases, you have to lean on the law because the law is fair. The law is plain. It's consistent. It's applied equally to everybody. And so with that as the backdrop, I'd like to just kind of walk through exactly what the BJA did. Now, the way the statute works, Section 10281, is that there's a descending order of distribution. Well, it's a simple statute. It doesn't contemplate the complexities that have here arisen of a premature death and all of the other things that, had he lived longer, might have been straightened out. Right. And so ultimately, we get to step four, which is the proxy for the designation of the PSOB benefit, where you can go to the designations under the life insurance policy on file. Meaning, who did the officer designate under that policy on file with his employer? So that's the question before the Court here today. Now, we do have thrice- What benefits did she receive? She got the workers' comp fund because she was listed as a dependent. She got the life insurance policy, I think, which was about $560,000, $70,000. She got his retirement benefits because she was expressly designated as a beneficiary of those benefits. To clarify, when you say she got the life insurance policy, that was through a settlement. That was through a settlement, correct. It wasn't directly from the life insurance policy proclaiming her to be a constructive benefit sharer. Correct. There was no legal pronouncement from a court. What might be helpful is 28 CFR 32.5. It's entitled Evidence. And it kind of provides the framework for how the BJA should assess evidentiary issues. And included within that is a subpart that actually discusses determinations of state public agencies. And I understand, like, a court, through an interpleader action, might not be a state public agency. But even there, in that subpart, it says that determinations of state agencies are not binding on the BJA because the BJA is not absolved of its independent responsibility to implement its regulations and its statute to determine how the federal benefit should be distributed. So that's kind of the framework under which I think the BJA was functioning. They went down to subpart four, and they said, okay, so we have thrice affirmed life insurance policy designations on file. 2003, 2006, 2007. They're pretty clear. The next question is through the regulation, 28 CFR 32.13. Is it legal? Is it valid? Is it revoked? Is it terminated in any way? That prescribes, that circumscribes the extent of what the BJA can do when they're analyzing the life insurance policy. It has been deemed not to be valid. Because if it were valid, the insurance company couldn't pay the money out to someone else. And this is where I think the letter is important. Because I don't think the insurance company ever made any legal pronouncement. What they said is, you have 14 days to negotiate a settlement. Whatever you agree upon, and I'm paraphrasing here, it's in the record. But whatever you agree upon, we'll approve as long as we're not subject to double liability. Where is that letter? She said it's in the record. Where is it? And just to be clear, did you finish your list of benefits that she got, or were there other things that I'm not aware of? I think that's it, Judge. And how much is at stake in this benefit? Approximately $300,000. So it's statutorily set at $250,000. There's a subpart that allows for a CPI adjustment, cost of consumer price index adjustment. Okay, so where is that insurance letter? Do you know? Not off the top of my head, unfortunately, Judge. I think it might be on page 212. I believe that's right. I don't think that's it. No, that's just a notification to her to file a claim. I apologize. I don't know where it is off the top of my head. It might be 224. Yes, it is 224. Okay. So I think the part that I was referring to is the fourth paragraph on 224. Well, it says, it appears the estate and or you may have a colorable claim to the life proceeds. So that's why they didn't pay out. Right, and that's what they acknowledge. There are two people who are making a claim. We're not going to make a determination. No, that's not correct. They didn't say we're not going to make a determination. It says you may have a colorable claim. I assure you, not all claims are colorable. Well, on the sixth paragraph, they actually say the standard is an innocent stakeholder and is unable to make a determination of who is entitled to these life insurance proceeds. Yes, but it decided it was at least a colorable claim. Correct. They couldn't ultimately resolve it, but I'm sure they get a lot of claims that have no basis. No, and I'm sure that's right, precisely. But I think this is where the BJA actually did consider the video, and they did consider the way that the policy was distributed, and that's where it becomes a substantial evidence-type determination because they relied on the thrice-affirmed designations on file with Deputy Collier's employer. And that's what they found compelling in this case. So do you agree that there's a statutory difference between A and B, that A, at 10-281, A keys in on the executed designation in the life insurance, executed designation, and then B doesn't? She's distinguishing language between A and B for 10-281 of the statute and saying under B, it isn't required that this be on the executed form. It's a holistic approach looking at all the evidence. Both Subpart A and Subpart B use the same language, most recently executed life insurance policy, and then the other one, Subpart A, uses most recently executed designation of the beneficiary, and both use the phrasing on file at the time of death. So you think in both cases it's the document and only the document? I think the extent of the BJA's inquiry beyond the document is to determine whether there's any reason to question whether the designations themselves are valid or invalid, illegal, revoked, or terminated in some way. That's what would prescribe their analysis, and that's in 28 CFR. So is it your belief that the BJA actually has no discretion whatsoever to make an assessment beyond simply whether or not this document was sort of legally entered? And by valid, I assume you mean, you know, was it signed by him? Was it witnessed by whoever needed to witness it? Things like that, like these formalities as opposed to, you know, did he intend to change the designation? I mean, what if this were Saunders? What if this were, or the other case, I can't remember the name of it, but where they were in the process of attempting to change the form, had actually filled out the change, just hadn't submitted it yet. Does the BJA have discretion in cases to deviate from the statutory language and say we're not going to use the on-file executed beneficiary because there's this other one he was in the process of changing, and while it's technically not on-file, we're nonetheless going to recognize it? They can actually look beyond the instrument itself, but, again, that's prescribed by regulation. So, for example, let's use this case because this is precisely what the BJA did. They got the video. They assessed the video, and they said, well, is there anything about this video that would undermine the legality, validity, or suggest that the written, the thrice-affirmed designations on file are revoked or terminated in some way? They weighed the evidence, and they ultimately— How could they conclude in light of the video that it wasn't, that this wasn't a video revocation? I can imagine they could say the revocation has to be in writing, but the video seems pretty clear that all benefits are supposed to go to Ms. Lee. It's a pretty generalized statement. It was my entire estate and everything like that, and so, again, it's a generalized utterance regarding the distribution of some part of his estate at some perspective point in the future, and it doesn't even offer designation language per se, and I think even under California law, if you go there, it requires something much stronger than that. Are you saying they have the absolute right to say, I'm going to ignore the video? I don't think so, Your Honor, and they didn't do that. Well, they ignored it. They didn't give it—they didn't apply it. They said, no, we're going to stick with the earlier designation. They did, and that was a weight issue, right? I mean, they acknowledged that the video existed. They analyzed the video, and if you look at the director's determination, you see what the director did. The director mentioned the statute, referred to the regulation, and said, is there anything about this video that undermines the thrice-affirmed designations on file with the employer? The most recent coming executed within the benefits period, just a couple years before Deputy Collier's death. This isn't a matter of federal law. Isn't this where the law of inheritance needs to be applied as to whether a subsequent, more recent statement, the existence of which is not challenged, can override the prior designation? I think it's first a question of federal law, and you can go into— What federal law applies this rule of inheritance? It's not a rule of inheritance, Your Honor. It's a rule regarding the life insurance beneficiary designations, and it's prescribed by statute. Well, isn't it a law of—we're talking about inheritance. We know that there are strange laws of inheritance that override how one might say, this is the law of contracts if you go to the corpus juris on contracts. And I'll concede I'm not a trusted estates lawyer, but what I do understand is that the life insurance benefits are actually distributed outside the estate. They're actually—it's a matter of contract. So normally in an estate— But how do you resolve the dispute? Nothing has been paid. Isn't that right? It was intended that in circumstances such as this, those aggrieved would be compensated. Instead you're saying because they argue, nobody gets compensated? I don't think nobody gets—you have to be eligible. I mean, that's what the statute requires is that you have to be a statutorily designated beneficiary under 10— But not under this statute. Section 1028. Under this statute? Under this statute, correct. And that's what governs in this case because it has a— What did they do? They split it into thirds? I'm sorry, Your Honor. I don't—I'm not sure I heard the question. Well, they said in this document we're looking at that there are three claimants. Isn't that right? There are the two listed designees under the most recently executed life insurance policy on file. That would be his mother and the girlfriend. The decision we're reviewing, the fact finder went through Pimentel and analyzed that. It did, correct. And so it actually did some weighing of the evidence under California state law and trying to understand whether mislead could be classified under one of the Pimentel exceptions. Correct. Correct, Judge Chen. So state law was being analyzed in this case? It was. It was, Your Honor. And I think that's what the BJA did. It did analyze the question under state law regarding whether, number one, because it's a multi-step process. If there's no question under the statute and the statute is clear in its face, then you don't have to kind of do this whole analysis. You can go to the next part of the statute. The next order of distribution would be the parents. But if there is a question, how far you can go into state law is prescribed by regulation. That's 28 CFR 32.13. And what that says is check the validity, check the legality, check whether it's been revoked or terminated in any way. So if you give Ms. Leet her best argument, which is that this 2008 video, and that would be an evidentiary weight issue that the director determined didn't weigh in her favor. But if you give her the benefit of the doubt and say, okay, that 2008 video qualifies as a revocation, then the only question then is, okay, if the policy on file, the designations on file are revoked, you should go to the next order of distribution under the statute, which would be the parents. Because you could conceivably think of a situation where you get multiple claimants, and the BJA has to deal with these issues all the time where there are competing claimants. And there could be a beneficiary waiting at the next step. And the video transcript, it seems to me, lacks the – I will say at a minimum it lacks the indicia of formality that you would normally expect for a revocation because it's clearly a jokey exchange between friends. I'll characterize it that way. But in any event, what he says precisely that I think is what's being relied on here is my – when he says, can you explain to them what you understand you've done here with your own separate property? Now, is his death benefit part of his separate property? Does he have – is that part of his property, do you think? I think – and Ms. Lee does make that argument. I don't think it's specific enough. Okay, so then he goes on to say, okay, my understanding is that one-third interest I have in the house upon my death or incapacitation reverts back. Control back to those two. So that's not Ms. Lee, right? Right. Okay. Then he says, but all other assets, savings, everything like that will be separate and go to Karen. So I guess the BJA said this – did they say this isn't really an asset or savings or something like that? That this amounts to him giving her his real property but doesn't amount to a revocation of his designation? Is that the BJA's conclusion? I think the BJA's conclusion was, number one, it seems to pronounce an understanding of a state of affairs rather than, you know, bequesting anything. It doesn't have the formal markers of something where you are making a legal determination as to where things like this would go. But to the second point, the second point was, I think, your point, Judge Moore, which is, you know, what does assets, savings, everything like that mean? That's pretty generalized. So it's kind of uncertainly implied within that statement. I think the third part was the context of when the statement was made. Deputy Collier had just inherited property from his deceased mother. They were making a video regarding how that property should be distributed upon Deputy Collier's death. And this was kind of an add-on statement in addition to how the property that he had just inherited should be distributed. So it didn't really have the markers of what would qualify as a formal designation under the most recently executed life insurance policy on file. I think the extra point to add to that, and this is, again, something that the BJA recognized, was this was then shelved away somewhere in a personal file, and no attempt was made to deliver it to the insurance company, to the employer. It was never dropped in the mail. And even under California law, if you get to that part of the analysis, under California law there's no case, and both parties acknowledge there is no case that would suggest that would be enough. We cited a number of cases where even under California law, if you get there, that California courts have sometimes been, you know, been a little bit more equitable, I think, and tried to stretch the law a little bit. But even there you see that there are limits on how far that law could stretch. So you're saying more likely than not this sheriff intended that his friend of 20 years ago would be the beneficiary rather than his current fiancée. He's saying more likely than not that was his intention. I didn't see a review, a declaration that that was his intention. What I did see was the concern about all the messy documentation. Regarding the county's files, Your Honor? Well, not having changed his written designation. Yeah, and I think that's where it does get tricky, Your Honor, because you have thrice-affirmed designations. But he did change it. He did change it orally and by video. And my concern is who is the decision maker? Who is the finder of fact as to the decedent's intention, assuming that state law at least gives some kind of controlling view to what the actual intention was? Again, I think this is where 28 CFR 32.5 would govern the director's indicates what type of weight and what type of analysis the director must do before coming to fact findings or conclusions of law. And here the director did weigh the evidence and considered all the facts. Now, here we don't have a legal pronouncement. But he did analyze the evidence. He did consider all the evidence that was before him. He expressly mentions the video. He expressly mentions the testimony. And ultimately he finds that these thrice-affirmed designations on file with his employer repeatedly reaffirming the designations. It's unequivocal. It's valid. It's legal. It's un-revoked. It's un-terminated. Pursuant to the regulation and pursuant to the law, the director had to reach the outcome that he did. And he wasn't unsympathetic to what the result would be because on the other side of this, there's a real person that this will affect. So he acknowledged, you know, we value Deputy Collier's sacrifice. It looks like you had a close and committed relationship. But the law prescribes what we can do. That's how Congress circumscribed our authority. And we have to do this under the prevailing law. We can't do this. We can't make it a free-for-all to reach an outcome that we think is right when it's not tethered to the law. The law anchors the decisions. And when the law anchors the decision, it's fair. For these reasons, we respectfully request the court affirm the judgment of BJA. Thank you. Thank you. We have five minutes for rebuttal. Your Honors, what the BJA is trying to do here is to, unsupported by the Act, elevate form over substance. And when I say it's unsupported by the Act, again, let's go back to the Act, which has two different prescriptions of what's to happen under 4A versus 4B. And to the extent that there is some equivocation that an executed designation form is somehow the same as an executed insurance policy, that's simply not the case. And how do we know that? If we go to the implementing regulations. In the implementing regulations under Section 32.13, the definition of a designated beneficiary is provided. So a beneficiary of a life insurance policy is designated as a beneficiary of such officer as of such date only if the designation is, as of that date, legal and valid. Now turning to the other definition of a designation on file. So under 4B, there's a separate definition in the regulations that talks about what it means to be a designation on file, which is required for 4A. Under 4A, a designation on file is defined as a designation of a beneficiary under the Act, 34 U.S.C. 10-228-A4A is on file. If Congress had intended for the designation of the life insurance policy to also be on file with the valid policy, it would have clearly said so, and the implementing regulations could have made that definition clear. It did not. What is clear is that it simply must go to the designated beneficiary. And here, the designated beneficiary was agreed by the insurance company, the other claimant who walked away for just 4% of the life insurance policy and who made no claim for the PSOB benefits. This is not a free-for-all. There are not multiple competing claimants here. There is one claimant because everyone except for the BJA determined that it is Ms. Lee who is the constructive designee of the policy. And to the extent that there is some confusion that maybe Ms. Stamp, this ex-girlfriend from years and years ago who was the second beneficiary on an old, stale designation form, to the extent that there is concern that she is somehow now nine years later going to come out of the woodworks and seek some additional payment from the Bureau, there is even a provision in Section 4B that provides for the benefit to be split in equal shares to the extent there are more than one individual designated on the policy. So at the very least, Ms. Lee is designated as a beneficiary through the video will, through the other information that we have and that was presented both to the insurance company and to the BJA. She was not just some random person. This was his fiancé. They were scheduled to be married in three months. They had the wedding planned. Everything was planned. They had only waited for that date because it was Sheriff Collier's 40th birthday and he didn't make it because he was serving the citizens and died in the line of duty. So they should not be penalized because everyone agreed. Under the Bureau's reading, under the Bureau's interpretation that this form is the only thing that governs, consider whether the parties had not agreed and the parties had gone to court and taken up expended court resources and gone to an interpleader. I'm sorry, Your Honor. I'm trying to understand. Are you saying that if they had actually gotten married, it would have made a difference? Because under the statute, it looks like it goes to these designated beneficiaries and then if not a designated beneficiary, to a parent. It's funny. It doesn't say to a spouse. The spouse is higher up on the waterfall, Your Honor. Oh, is it? Okay. Yes. That's what I was trying to figure out. Yes. And there are no parents that survived him either. So this claim would go unpaid. So then it would go to the spouse even if there was a designated beneficiary on a life insurance that was someone else if they had been married? The spouse is first. Yes, Your Honor. And how come you didn't argue that they, under California law, were common law married? The common law marriage was inapplicable in this case. But even assuming that the parties had not agreed and everyone had not recognized Ms. Lee's claim, if they had gone to an interpleader and expended court resources and waited for a judgment, this requirement that you can only give it to the person on this form, who knows if the Bureau would even have honored the interpleader judgment. They're saying that the only thing that matters is this form and that's simply not supported by the Act, the regulations, or the record in this case. We ask that you reverse the denial of the claim. Okay. Thank you. Thank you both. The case is taken under submission. Thank you.